**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X          **Docket No. 22-cv-7278**

JUANEITA BYFIELD,

PLAINTIFF,                                          <u>**COMPLAINT**</u>

-*against*-

**PLAINTIFF DEMANDS**<br>**A TRIAL BY JURY**

WEILL CORNELL IMAGING AT NEW YORK-
PRESBYTERIAN,

DEFENDANT.

-------------------------------------------------------------------X

JUANEITA BYFIELD ("PLAINTIFF"), by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against WEILL CORNELL IMAGING AT NEW YORK-PRESBYTERIAN, ("DEFENDANT") alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

<u>**NATURE OF THE CASE**</u>

1.       PLAINTIFF complains pursuant to the discrimination and retaliation provisions of the (i) <u>**Title VII of the Civil Rights Act of 1964**</u>, as amended ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 (the "PDA"); (ii) <u>**New York State Human Rights Law**</u>, New York State Executive Law, § 296 *et seq*. ("NYSHRL"); (iii) <u>**New York City Human Rights Law**</u>, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"); and (iv) any other claim(s) that can be inferred from the facts set forth herein; and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being discriminated against and retaliated against by her employer on the basis of PLAINTIFF's **sex (female) by way of sexual harassment and familial status (pregnancy).**

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of PLAINTIFF brought under state law pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.    PLAINTIFF timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") upon which this Complaint is based.

6.    PLAINTIFF received a Notice of Right to Sue from the EEOC dated June 2, 2022 with respect to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

7.    This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8.    At all times material, JUANEITA BYFIELD (hereinafter "PLAINTIFF"), was and is a woman and a resident of the State of New York, Nassau County.

9.    At all times material, PLAINTIFF was and is a "person" and "employee" entitled to protection as defined by the Title VII, NYSHRL, and NYCHRL.

10.   At all times material, WEILL CORNELL IMAGING AT NEW YORK-PRESBYTERIAN ("DEFENDANT") was and is a New York not-for-profit corporation headquartered at 525 East 68th Street, New York, New York 10021.

11.   At all times material, DEFENDANT was and is a healthcare facility providing diagnostic

and imaging services in New York.

12. At all times material, DEFENDANT "employs" twenty or more "employees," and is therefore an "employer" within the meaning of Title VII, the NYSHRL, and the NYCHRL.

13. At all times material, PLAINTIFF was an employee of DEFENDANT.

## MATERIAL FACTS

14. On or about February 13, 2017, PLAINTIFF was hired by DEFENDANT as a Customer Service Representative earning $23.43 per hour. PLAINTIFF typically worked a full-time schedule of 35 hours per week.

15. At all times material, PLAINTIFF was an exemplary employee with no write-ups or disciplinary actions throughout her employment.

16. At all times material, PLAINTIFF worked under the supervision of Access and Integration Supervisor, Kianna Young ("Ms. Young").

17. On or about the week of February 23, 2021, Ms. Young notified PLAINTIFF of PLAINTIFF's promotion to the position of Access and Integration Coordinator, a remote position. Ms. Young advised PLAINTIFF that since PLAINTIFF's role was a remote position, PLAINTIFF would not be required to report to the office.

18. On or about March 2, 2021, DEFENDANT provided PLAINTIFF an official offer letter confirming PLAINTIFF's promotion and subsequent raise to $29.46 per hour.

19. On or about March 8, 2021, PLAINTIFF assumed her role as Access and Integration Coordinator. As Access and Integration Coordinator, PLAINTIFF's duties and responsibilities included but were not limited to training new and existing staff members and troubleshooting system errors.

20. At all times material, as Access and Integration Coordinator, PLAINTIFF worked approximately 40 hours a week.

21.     In or about March 2021, PLAINTIFF was due for a 2% raise. PLAINTIFF contacted Ms. Young to inquire about the raise. Ms. Young replied that PLAINTIFF was not currently eligible for a raise and advised DEFENDANT would revisit the raise in or about December 2021, when PLAINTIFF was expected to complete a Master's Degree.

22.     On or about March 3, 2021, although PLAINTIFF's position was fully remote, PLAINTIFF was instructed to work from the office a few days a week to shadow Ms. Young. During these "training sessions" Ms. Young failed to properly train PLAINTIFF and instead spent hours venting to PLAINTIFF regarding Ms. Young's personal life.

23.     On or about March 3, 2021, while seated in Ms. Young's office, Ms. Young stared at PLAINTIFF's stomach and asked, in sum and substance, "Is there something you want to tell me?" PLAINTIFF, embarrassed and uncomfortable, disclosed to Ms. Young, that PLAINTIFF was pregnant but not ready to disclose PLAINTIFF's pregnancy to anyone yet. PLAINTIFF asked Ms. Young to keep this information private.  Ms. Young replied, in sum and substance: "I was pregnant once by my ex-boyfriend. It was a toxic relationship. I got an abortion. He forced me into it; He acted like it never happened and ruined our relationship. My past trauma is too much. So, I wouldn't want to fuck someone else's life up and ruin the kid's life."

24.     In the days that followed, PLAINTIFF noted a distinct shift in Ms. Young's treatment towards PLAINTIFF. After learning of PLAINTIFF's pregnancy, Ms. Young began treating PLAINTIFF in a hostile and discriminatory manner.

25.     On or about March 4, 2021, Ms. Young stated to PLAINTIFF, in sum and substance: "I can't believe you are pregnant. I couldn't do it; I had my tubes tied. My boyfriend agreed to me having my tubes tied, but now wants children. I think that's why he hasn't proposed. By the time he has kids, and they are in high school, he would be like 80 years old."

26.    On multiple dates, Ms. Young directed PLAINTIFF to report to the office under the guise of receiving training. For example, Ms. Young directed PLAINTIFF to come into the office to train with Ms. Young and Ms. Young's former partner, Customer Service Supervisor, Christine Kennedy ("Kennedy"). However, Ms. Kennedy began training for another position and was therefore unavailable to train PLAINTIFF.   As such, Ms. Young continued to subject PLAINTIFF to inappropriate conversations instead of properly training PLAINTIFF.

27.    On multiple occasions, PLAINTIFF arrived to the office but received no training as Ms. Young insisted on recounting inappropriate conversations regarding illegal drug activities between Ms. Young's brother and father; Ms. Young's ex-boyfriend's masturbation habits in the workplace; Ms. Young's ex-boyfriend's proclivity to post sexual advertisements on Craigslist; and Ms. Young's struggles with alcoholism and drug addiction. Further, instead of training PLAINTIFF, Ms. Young would spend hours describing Ms. Young's sexual relationship with co-worker, Gabriel Diaz ("Mr. Diaz").

28.    PLAINTIFF frequently attempted to change the topic, and refocus the conversation to training, but Ms. Young persisted with inappropriate conversation topics. This caused PLAINTIFF to feel uncomfortable, anxious, and frustrated with the lack of training and inappropriate discussions.

29.    Indeed, PLAINTIFF never received proper training. Instead, Ms. Young repeatedly apologized for Ms. Young's awkward and unprofessional transition and for "throwing" PLAINTIFF into the role.

30.    On multiple occasions, Ms. Young failed to assign PLAINTIFF work. On one of these occasions, Ms. Young stated to PLAINTIFF, in sum and substance: "Just shut up and collect your check. Don't make it obvious you are not working. I would expect you to not

tell anyone!" Ms. Young's comments caused PLAINTIFF to feel intimidated, anxious and to fear for her employment.

31.    On two occasions, Ms. Young called PLAINTIFF and informed PLAINTIFF that Ms. Young was leaving early for the day and directed PLAINTIFF to also end early in order to avoid making Ms. Young "look bad," or raise any suspicions with management.  On both occasions, Ms. Young followed up the next day by distributing last minute assignments to PLAINTIFF, and then admonished PLAINTIFF falsely claiming late work submissions.

32.    On or about May 13, 2021, merely one hour before the designated training time, Ms. Young called PLAINTIFF to advise her that PLAINTIFF would be training all seven sites on a workflow Ms. Young had created. PLAINTIFF had never seen the workflow nor received instruction on how to implement it. Nevertheless, PLAINTIFF successfully conducted the training. PLAINTIFF later asked Ms. Young to provide PLAINTIFF with more notice for high-level staff trainings. Ms. Young ignored PLAINTIFF's request.

33.    In the weeks that followed, PLAINTIFF continued to request training from Ms. Young. PLAINTIFF advised Ms. Young that Ms. Young's failure to train PLAINTIFF was impeding PLAINTIFF from performing PLAINTIFF's work duties. Nevertheless, Ms. Young continued to ignore PLAINTIFF's requests and began treating PLAINTIFF with increased hostility.

34.    For example, Ms. Young would ostracize PLAINTIFF and refuse to speak to PLAINTIFF. On multiple occasions, Ms. Young would reference PLAINTIFF's prior complaints of a former supervisor and would yell at PLAINTIFF "Don't go reporting me to HR, I hope if you have a problem you would come to me directly instead of going above my head!"

35.   Ms. Young would frequently reference PLAINTIFF's prior complaints of a former supervisor in an effort to intimidate PLAINTIFF and dissuade PLAINTIFF from reporting Ms. Young's discriminatory and retaliatory conduct.

36.   Despite Ms. Young's failure to train PLAINTIFF, PLAINTIFF continued to thrive in PLAINTIFF's position and was frequently praised supervisors for PLAINTIFF's exemplary work performance.

37.   On or about June 7, 2021, PLAINTIFF was again required to work in office under the pretext of training.  Although Pregnant, PLAINTIFF commuted for over an hour and a half, to arrive to the office. Once in the office, Ms. Young again refused to provide training and instead asked PLAINTIFF to stay in Ms. Young's office and sit with Ms. Young for the day. Further, Ms. Young refused to wear a mask, causing PLAINTIFF to fear COVID-19 exposure while pregnant.

38.   That same day, on or about June 7, 2021, Ms. Young made various discriminatory and offensive comments regarding PLAINTIFF's pregnancy. For example, Ms. Young looked at PLAINTIFF's pregnant belly, grimaced and shook her head, while stating to PLAINTIFF, in sum and substance: "Do you feel it move yet?" PLAINTIFF responded yes. Ms. Young replied, in sum and substance: "Yuck! Disgusting! Your stomach freaks me out. It is satisfying enough for me to just babysit and give kids back." PLAINTIFF felt humiliated and offended by Ms. Young's comments.

39.   Further, on or about June 7, 2021, Ms. Young also made offensive remarks alluding to PLAINTIFF's previous complaints of a former supervisor. Ms. Young stated a previous employee had threatened DEFENDANT with a lawsuit claiming unfair treatment. Ms. Young then claimed that as a result of that employee's complaint, DEFENDANT promoted

the employee. Ms. Young emphasized Managements hatred of the employee and claimed the employee "had a solid case against them."

40.    By the end of the day, PLAINTIFF felt physically unwell. PLAINTIFF has a history of low hemoglobin, which results in lower oxygen levels for PLAINTIFF and her unborn child. After twelve hours of sitting in an office with a mask on, PLAINTIFF felt dizzy and tired. Further, PLAINTIFF's feet were swollen, and PLAINTIFF's pelvis felt locked from sitting for multiple hours.

41.    Despite PLAINTIFF's remote position and pregnancy, Ms. Young continued to conduct weekly "touchpoint" meetings with PLAINTIFF to discuss PLAINTIFF's progress. During these meetings, Ms. Young would discuss PLAINTIFF's strengths and weaknesses and praise PLAINTIFF's work. However, when Ms. Young would email recaps of the meeting, Ms. Young would only include negative feedback, purposely choosing to not include any of PLAINTIFF's positive contributions and performances.

42.    Ms. Young purposely documented only negative feedback in order to create a paper trail in preparation for PLAINTIFF's impending demotion and termination.

43.    Nevertheless, on or about June 15, 2021, Ms. Young called PLAINTIFF and stated PLAINTIFF was doing great, and no longer required "touchpoint meetings." Ms. Young then stated PLAINTIFF was "killing it" and that Ms. Young was "happy to see [PLAINTIFF] shine."

44.    On or about July 8, 2021, Ms. Young once again emailed PLAINTIFF only negative feedback, despite previously claiming Ms. Young was so happy with PLAINTIFF's performance that PLAINTIFF no longer required "touchpoint meetings."

45.    On or about June 17, 2021, during a zoom meeting with Ms. Young, and after another offensive remark, Ms. Young stated, "I WOULDN'T WANT YOU CALLING HR ON

ME." Ms. Young continued repeating this in an effort to intimidate PLAINTIFF and dissuade PLAINTIFF from reporting Ms. Young's discriminatory conduct.

46.     Seeing no other option, and fearing the loss of PLAINTIFF's employment, PLAINTIFF once again assured Ms. Young that PLAINTIFF would address any concerns with Ms. Young first. Ms. Young responded claiming it was hard to trust employees because they were quick to go to HR.

47.     During the same meeting, Ms. Young asked to see PLAINTIFF's belly and stated, "let me see your stomach, I want to see if it has grown since last time." PLAINTIFF stood up and displayed PLAINTIFF's belly as Ms. Young requested. Ms. Young then stated, "Gross! I showed my mom a picture of your stomach, we both think you have pre-eclampsia because your stomach is so big, and your frame is so small! I am so happy my tubes are tied!"

48.     Ms. Young's offensive comments caused PLAINTIFF to feel ashamed, embarrassed, uncomfortable, distressed and upset.

49.     On or about June 23, 2021, Ms. Young missed an important email regarding a request from Chief Operating Officer, Dr. Keith Hental ("Dr. Hental"). Although Ms. Young and PLAINTIFF shared an email inbox, Ms. Young had specifically instructed PLAINTIFF to never to answer emails from Dr. Hental because Dr. Hental "is very particular." As such, Ms. Young insisted that PLAINTIFF not handle anything relating to Dr. Hental or Vanessa Markaj.

50.     Therefore, following Ms. Young's directions, PLAINTIFF printed Dr. Hental's email and left it for Ms. Young to address.

51.     In the days that followed, Ms. Young blamed PLAINTIFF for failing to address the email to upper management. Ms. Young followed up with a "touchpoint" meeting during which

Ms. Young purported to document that PLAINTIFF had missed emails from upper management.

52.    In or about June 2021, Ms. Young and PLAINTIFF were required to conduct a company training. Ms. Young was coordinating the company training with site managers. PLAINTIFF took initiative to reach out to supervisors in an effort to help coordinate but received no responses from the site managers. Ms. Young then stated that PLAINTIFF should focus on training the Customer Service Representatives and claimed they could not force site managers to sign up for training. Nevertheless, Ms. Young then later blamed PLAINTIFF for failing to train a site manager.

53.    On or about June 30, 2021, Ms. Young messaged PLAINTIFF on Microsoft Teams chat expressing Ms. Young had heard nothing but positive things regarding PLAINTIFF's performance.

54.    In or about the week of July 2, 2021, following Ms. Young's multiple compliments regarding PLAINTIFF's trainings and performance, Ms. Young asked PLAINTIFF to train a new employee, Access and Integration Coordinator, Kate Sciacca ("Ms. Sciacca").

55.    On or about July 6, 2021, PLAINTIFF was out of office to attend a pregnancy related medical appointment. In PLAINTIFF's absence, Ms. Young scheduled PLAINTIFF to train the entire organization. On the day of the training, despite having pre-approved training documents, Ms. Young sent PLAINTIFF updated documents 20 minutes after PLAINTIFF had left home to commute to work. Ms. Young was aware of PLAINTIFF's schedule, and purposely sent the updated documents at the last minute to induce the maximum disadvantage to PLAINTIFF.

56.    On July 12, 2021, PLAINTIFF provided DEFENDANT's staff with a survey PLAINTIFF had created to gauge the effectiveness of PLAINTIFF's trainings.

57. On July 20, 2021, PLAINTIFF received the results of the survey, which were overwhelmingly positive. Notably, the only imperfect score among the nine participants was from Ms. Young.

58. On or about July 20, 2021, PLAINTIFF successfully concluded Ms. Sciacca's training.

59. That same day, on or about July 20, 2021, DEFENDANT demoted PLAINTIFF for pretextual reasons, claiming PLAINTIFF had failed to respond to emails on time and called out on short notice. Notably, PLAINTIFF had only called out with short notice once, due to a pregnancy-related illness.

60. During the meeting PLAINTIFF suffered a panic attack. PLAINTIFF finished the meeting feeling humiliated and distressed. Later that evening, PLAINTIFF suffered from pelvic cramping and briefly lost consciousness. As such, PLAINTIFF was required to see her doctor the following day to check on the baby.

61. In the days that followed, and PLAINTIFF's doctor placed PLAINTIFF on bedrest.

62. PLAINTIFF's unjust demotion required PLAINTIFF to return to in-office work effective July 26, 2021. The return to office work required PLAINTIFF to commute one and a half hours each way, and to wear a mask in office for extended periods of time.

63. As such, PLAINTIFF contacted DEFENDANT and requested a reasonable accommodation due to PLAINTIFF's pregnancy and required bedrest. Specifically, PLAINTIFF requested to work remotely due to the doctor's bedrest orders. DEFENDANT did not respond to PLAINTIFF's request for a reasonable accommodation, but instead directed PLAINTIFF to formally accept the demotion by July 23, 2021, or be terminated.

64. DEFENDANT did not ask PLAINTIFF how PLAINTIFF's pregnancy would affect PLAINTIFF's ability to perform her duties, nor did DEFENDANT engage in an interactive

process with PLAINTIFF regarding possible accommodations that might help PLAINTIFF.

65.    PLAINTIFF asked for a short-term reasonable accommodation by asking to work remotely due to PLAINTIFF's bedrest orders. This accommodation was reasonable and created no undue hardship for DEFENDANT.

66.    PLAINTIFF was demoted based on her pregnancy as evidenced by Ms. Young's offensive and discriminatory comment's regarding PLAINTIFF's pregnancy which included comments such as "Yuck, Disgusting, your stomach freaks me out"; "Gross, I showed my mom a picture of your stomach, we both think you have pre-eclampsia because your stomach is so big"; and "I am so happy my tubes are tied!" Further, only days after learning of PLAINTIFF's pregnancy, Ms. Young began sabotaging PLAINTIFF's employment in an effort to have PLAINTIFF terminated or demoted.

67.    DEFENDANT took adverse employment actions against PLAINTIFF by demoting PLAINTIFF for pretextual reasons, despite PLAINTIFF's outstanding performance.

68.    As a result of PLAINTIFF's demotion, PLAINTIFF is no longer eligible for tuition reimbursement or paid maternity leave.

69.    DEFENDANT's actions and conduct were intentional and intended to harm PLAINTIFF.

70.    As a result of DEFENDANT's actions, PLAINTIFF feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed. Further, PLAINTIFF has experienced panic attacks and a lower sense of worth.

71.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, benefits, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional

pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

PLAINTIFF further experienced severe emotional and physical distress.

## FIRST CAUSE OF ACTION
### *Discrimination in Violation of Title VII*

72.   PLAINTIFF repeats and realleges each and every allegation in paragraphs one through

seventy-two.

73.   Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in

relevant part:

> It shall be an unlawful employment practice for an employer to fail
> or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to their
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, **sex**, or national
> origin[.] (Emphasis added.)

74.   42 U.S. Code § 2000e(k) states in relevant part:

> The terms "because of sex" or "on the basis of sex" include, but are
> not limited to, because of or **on the basis of pregnancy**, childbirth,
> or related medical conditions; and **women affected by pregnancy**,
> childbirth, or related medical conditions shall be treated the same
> for all employment-related purposes[.] (Emphasis added.)

75.   As described above, DEFENDANT discriminated against PLAINTIFF on the basis of her

sex/pregnancy, in violation of Title VII, by creating, fostering, condoning, accepting,

ratifying, and/or negligently failing to prevent or remedy a hostile work environment that

included, among other things, severe or pervasive harassment of PLAINTIFF based on her

sex and pregnancy. Specifically, immediately upon learning of PLAINTIFF's pregnancy,

DEFENDANT, through its employees, began treating PLAINTIFF in a hostile and

discriminatory manner. For example, immediately after learning of PLAINTIFF's

pregnancy, Ms. Young made multiple offensive and discriminatory statements to

PLAINTIFF such as, "Yuck, Disgusting, your stomach freaks me out"; "Gross, I showed

my mom a picture of your stomach, we both think you have pre-eclampsia because your stomach is so big"; and "I am so happy my tubes are tied!"  Further, only days after learning of PLAINTIFF's pregnancy, Ms. Young began sabotaging PLAINTIFF's employment by purposely denying PLAINTIFF training; blaming PLAINTIFF for Ms. Young's errors; and purposefully documenting only negative feedback in an effort to create a paper trail for PLAINTIFF's demotion and/or termination.

76.   Additionally, DEFENDANT, through its employees, engaged in a pattern of severe and pervasive sexual harassment against PLAINTIFF wherein Ms. Young made frequent inappropriate and sexual comments towards PLAINTIFF, subjected PLAINTIFF to countless stories regarding Ms. Young's sexual escapades, Ms. Young's ex-boyfriend's masturbation, Ms. Young's ex-boyfriend's advertisements for sexual favors on websites, and Ms. Young's addictions.

77.   As a result of the unlawful discriminatory conduct of DEFENDANT in violation of Title VII, PLAINTIFF has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

78.   The unlawful discriminatory actions of DEFENDANT constitute malicious, willful, and wanton violations of Title VII, for which PLAINTIFF is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
*Retaliation in Violation of Title VII*

79.   PLAINTIFF repeats and realleges each and every allegation in paragraphs one through seventy-two.

80. <u>Title VII of the Civil Rights Act of 1964</u>, *as amended*, <u>42 U.S.C.</u> §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

81. As described above, PLAINTIFF engaged in activities protected by Title VII, by complaining to DEFENDANT of a former supervisor's inappropriate behavior, by objecting to DEFENDANT's discriminatory statements, and by requesting a reasonable accommodation due to PLAINTIFF's pregnancy.

82. DEFENDANT retaliated against PLAINTIFF in violation of Title VII, by subjecting PLAINTIFF to a hostile and adverse work environment wherein PLAINTIFF was treated with hostility, reprimanded for pretextual reasons, subjected to constant offensive remarks regarding PLAINTIFF's pregnancy and appearance, ignored, ostracized, harassed regarding prior HR complaints, and ultimately demoted for pretextual reasons.

83. DEFENDANT would not have terminated PLAINTIFF but for PLAINTIFF's pregnancy, objections to discriminatory treatment, and request for a reasonable accommodation.

84. As a direct result of PLAINTIFF's protected activities, DEFENDANT retaliated against PLAINTIFF by treating PLAINTIFF in a hostile manner, and ultimately demoting PLAINTIFF for pretextual reasons.

85. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

86. As a result of the retaliatory conduct of DEFENDANT in violation of Title VII, PLAINTIFF has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering, for which she is entitled to an award of monetary damages, as well as

past and future lost wages and benefits and other compensatory damages, and other relief.

87.    The unlawful discriminatory actions of DEFENDANT constitute malicious, willful, and

wanton violations of Title VII, for which PLAINTIFF is entitled to an award of punitive

damages.

**THIRD CAUSE OF ACTION**
*Discrimination in Violation of the NYSHRL*

88.    PLAINTIFF repeats and realleges each and every allegation in paragraphs one through

seventy-two.

89.    New York State Executive Law §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or
> licensing agency, because of an individual's age, race, creed, color,
> national origin, sexual orientation, military status, **sex**, disability,
> predisposing genetic characteristics, **familial status**, marital status,
> or domestic violence victim status, to refuse to hire or employ or to
> bar or to discharge from employment such individual or to
> discriminate against such individual in compensation or in terms,
> conditions or privileges of employment. (Emphasis added.)

90.    New York State Executive Law §292(26) defines the term "familial status" to include "any

person who is pregnant."

91.    Under New York State law, sexual harassment does not need to be "severe or pervasive"

before it is unlawful. A single incident can be sufficient. Harassment is unlawful if it is

anything more than what a "reasonable victim of discrimination would consider petty

slights or trivial inconveniences."

92.    As described above, DEFENDANT discriminated against PLAINTIFF on the basis of her

sex, pregnancy, and familial status, in violation of NYSHRL by creating, fostering,

condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of PLAINTIFF based on her sex and familial status. Specifically, immediately upon learning of PLAINTIFF's pregnancy, DEFENDANT, through its employees, began treating PLAINTIFF in a hostile and discriminatory manner. For example, immediately after learning of PLAINTIFF's pregnancy, Ms. Young made multiple offensive and discriminatory statements to PLAINTIFF such as, "Yuck, Disgusting, your stomach freaks me out"; "Gross, I showed my mom a picture of your stomach, we both think you have pre-eclampsia because your stomach is so big"; and "I am so happy my tubes are tied!" Further, only days after learning of PLAINTIFF's pregnancy, Ms. Young began sabotaging PLAINTIFF's employment by purposely denying PLAINTIFF training; blaming PLAINTIFF for Ms. Young's errors; and purposefully documenting only negative feedback in an effort to create a paper trail for PLAINTIFF's demotion and/or termination.

93.   Additionally, DEFENDANT, engaged in a pattern of sexual harassment against PLAINTIFF that went far beyond "petty slights or trivial inconveniences." DEFENDANT, through its employee, Ms. Young, subjected PLAINTIFF to months of sexual and inappropriate conduct. Specifically, Ms. Young made frequent inappropriate and sexual comments towards PLAINTIFF and subjected PLAINTIFF to countless stories regarding Ms. Young's sexual escapades, Ms. Young's ex-boyfriend's masturbation, Ms. Young's ex-boyfriend's advertisements for sexual favors on websites, and Ms. Young's addictions.

94.   As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYSHRL, PLAINTIFF has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

95.   As a result of DEFENDANT's unlawful discriminatory conduct in violation of NYSHRL,

PLAINTIFF has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

96. DEFENDANT's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which PLAINTIFF is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
*Retaliation in Violation of the NYSHRL*

97. PLAINTIFF repeats and realleges each and every allegation in paragraphs one through seventy-two.

98. New York State Executive Law § 296(7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

99. As described above, PLAINTIFF engaged in activities protected by NYSHRL, by complaining to DEFENDANT of a former supervisor's inappropriate behavior, by objecting to DEFENDANT's discriminatory statements, and by requesting a reasonable accommodation due to PLAINTIFF's pregnancy.

100. DEFENDANT retaliated against PLAINTIFF in violation of NYSHRL by subjecting PLAINTIFF to a hostile and adverse work environment wherein PLAINTIFF was treated with hostility, reprimanded for pretextual reasons, subjected to constant offensive remarks regarding PLAINTIFF's pregnancy and appearance, ignored, ostracized, harassed regarding prior HR complaints, and ultimately demoted for pretextual reasons.

101.    DEFENDANT would not have terminated PLAINTIFF but for PLAINTIFF's pregnancy, objections to discriminatory treatment, and request for a reasonable accommodation.

102.    As a direct result of PLAINTIFF's protected activities, DEFENDANT retaliated against PLAINTIFF by treating PLAINTIFF in a hostile manner, and ultimately demoting PLAINTIFF for pretextual reasons.

103.    Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

104.    As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYSHRL, PLAINTIFF has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

105.    As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYSHRL, PLAINTIFF has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

106.    DEFENDANT's unlawful discriminatory actions constitute violations of the NYSHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which PLAINTIFF is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
*Discrimination in Violation of NYCHRL*

107.    PLAINTIFF repeats and realleges each and every allegation in paragraphs one through seventy-two.

108.     The Administrative Code of City of New York § 8-107(1)(a) provides that

It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

109.   Under New York City law, sexual harassment does not need to be "severe or pervasive" before it is unlawful. A single incident can be sufficient. Harassment is unlawful if it is anything more than what a "reasonable victim of discrimination would consider petty slights or trivial inconveniences."

110.   As described above, DEFENDANT discriminated against PLAINTIFF on the basis of her sex, pregnancy and familial status, in violation of NYCHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of PLAINTIFF based on her sex, pregnancy, and familial status. Specifically, immediately upon learning of PLAINTIFF's pregnancy, DEFENDANT, through its employees, began treating PLAINTIFF in a hostile and discriminatory manner. For example, immediately after learning of PLAINTIFF's pregnancy, Ms. Young made multiple offensive and discriminatory statements to PLAINTIFF such as, "Yuck, Disgusting, your stomach freaks me out"; "Gross, I showed my mom a picture of your stomach, we both think you have pre-eclampsia because your stomach is so big"; and "I am so happy my tubes are tied!" Further, only days after learning of PLAINTIFF's pregnancy, Ms. Young began sabotaging PLAINTIFF's employment by purposely denying PLAINTIFF training; blaming PLAINTIFF for Ms. Young's errors; and purposefully documenting only negative feedback in an effort to create a paper trail for PLAINTIFF's demotion and/or termination.

111.  Additionally, DEFENDANT, engaged in a pattern of sexual harassment against PLAINTIFF that went far beyond "petty slights or trivial inconveniences." DEFENDANT, through its employee, Ms. Young, subjected PLAINTIFF to months of sexual and inappropriate conduct. Specifically, Ms. Young made frequent inappropriate and sexual comments towards PLAINTIFF and subjected PLAINTIFF to countless stories regarding Ms. Young's sexual escapades, Ms. Young's ex-boyfriend's masturbation, Ms. Young's ex-boyfriend's advertisements for sexual favors on websites, and Ms. Young's addictions.

112.  As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYCHRL, PLAINTIFF has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

113.  As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYCHRL, PLAINTIFF has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

114.  DEFENDANT's unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which PLAINTIFF is entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
*Retaliation in Violation of NYCHRL*

115.  PLAINTIFF repeats and realleges each and every allegation in paragraphs one through seventy-two.

116.  The New York City Administrative Code § 8-107(7) provides that it shall be unlawful

discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

117. As described above, PLAINTIFF engaged in activities protected by NYCHRL, by complaining to DEFENDANT of a former supervisor's inappropriate behavior, by objecting to DEFENDANT's discriminatory statements, and by requesting a reasonable accommodation due to PLAINTIFF's pregnancy.

118. DEFENDANT retaliated against PLAINTIFF in violation of NYCHRL by subjecting PLAINTIFF to a hostile and adverse work environment wherein PLAINTIFF was treated with hostility, reprimanded for pretextual reasons, subjected to constant offensive remarks regarding PLAINTIFF's pregnancy and appearance, ignored, ostracized, harassed regarding prior HR complaints, and ultimately demoted for pretextual reasons.

119. DEFENDANT would not have terminated PLAINTIFF but for PLAINTIFF's pregnancy, objections to discriminatory treatment, and request for a reasonable accommodation.

120. As a direct result of PLAINTIFF's protected activities, DEFENDANT retaliated against PLAINTIFF by treating PLAINTIFF in a hostile manner, and ultimately demoting PLAINTIFF for pretextual reasons.

121. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

122. As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYCHRL, PLAINTIFF has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

123. As a result of DEFENDANT's unlawful discriminatory conduct in violation of the NYCHRL, PLAINTIFF has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

124.    DEFENDANT's unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which PLAINTIFF is entitled to an award of punitive damages.

## JURY DEMAND

125.    Pursuant to Federal Rule of Civil Procedure 38(b), PLAINTIFF demands a trial by jury on all claims in this action.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against DEFENDANT:

A.    Declaring that DEFENDANT engaged in unlawful employment practices prohibited by Title VII, NYSHRL, and NYCHRL in that DEFENDANT discriminated against PLAINTIFF on the basis of her sex and familial status, and pregnancy and retaliated against PLAINTIFF by terminating PLAINTIFF for engaging in protected activity;

B.    Awarding damages to PLAINTIFF for all damages resulting from DEFENDANT's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding PLAINTIFF compensatory damages related to injuries suffered as per PLAINTIFF's State-law claims;

D.    Awarding PLAINTIFF compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.    Awarding PLAINTIFF punitive damages;

F.    Awarding PLAINTIFF attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.    Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just

and proper to remedy DEFENDANT's unlawful employment practices.


Dated: New York, New York
        August  __, 2022

                                    **PHILLIPS & ASSOCIATES,**
                                    **ATTORNEYS AT LAW, PLLC**

                        By:   _____
                                    Cathryn Harris-Marchesi, Esq.
                                    45 Broadway, Suite 430
                                    New York, NY 10006
                                    T: (212) 248-7431
                                    F: (212) 901-2107
                                    charris-marchesi@tpglaws.com